UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

KRISTY LOUISE SPENCER,  )
           )
   Plaintiff,    )   No. 5:14-CV-352-REW
           )
v.          )
           )  MEMORANDUM OPINION AND
CAROLYN W. COLVIN, ACTING )     ORDER
COMMISSIONER OF SOCIAL  )
SECURITY,      )
           )
   Defendant.   )

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff, Kristy Louise Spencer, appeals the Commissioner's denial of her application for Disability Insurance Benefits and Supplemental Security Benefits (collectively, "benefits").[1] The matter is before the Court on cross-motions for summary judgment. The Court **GRANTS** the Commissioner's motion (DE #16) and **DENIES** Spencer's motion (DE #14) because substantial evidence supports the findings resulting in the administrative decision, and the decision rests on proper legal standards.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Spencer is 44 years old. *See* R. at 66. During her career, she worked as a school bus driver, crisis line operator, and Walmart shoe department sales clerk. R. at 35-37. She earned a

---

[1] The "standard of review for supplemental security income cases mirrors the standard applied in social security disability cases." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, at \*3 (6th Cir. 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at \*3 (E.D. Mich. Jan. 14, 2013), *adopted in* 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at \*4 (E.D. Ky. Feb. 3, 2010) ("[T]he same legal standards and sequential evaluation process is employed for making the disability determination regardless of whether an application is for DIB or SSI.").

GED in 1996. R. at 36-37. Spencer alleges her disability began on September 29, 2011. R. at 11. She applied for a period of disability and disability insurance benefits, as well as for supplemental security income, on January 23, 2012. R. at 11, 80. Her claims were initially denied on May 16, 2012, R. at 80, 114-17, and denied upon reconsideration on September 6, 2012. R. at 11, 121-23, 124-26. Spencer then filed a written request for a hearing on September 10, 2012. R. at 11, 128-29. Administrative Law Judge ("ALJ") Don C. Paris held a video hearing on April 4, 2013. R. at 11. Spencer appeared and testified in Hazard, Kentucky, and the ALJ presided in Lexington. Spencer was represented by counsel. R. at 11. Tina Stambaugh, an impartial vocational expert ("VE"), also appeared and testified. R. at 11. The ALJ denied Spencer's claims on April 26, 2013. R. at 24.

In his decision, the ALJ found that Spencer's degenerative disc disease of the cervical and lumbar spine, cerebral degeneration (including Chiari malformation and headaches), and affective disorder were severe, but that these impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. R. at 13-15. The ALJ found that Spencer's claimed anxiety impairment was not severe due (at least in part) to failure to satisfy the 12-month durational requirement. R. at 14. ALJ Paris found that Spencer had the residual functional capacity ("RFC") to perform medium work with certain limitations. R. at 16. After thoroughly reviewing Spencer's course of treatment, the ALJ determined that Spencer's statements concerning the effects of her impairments were not entirely credible. R. at 21. ALJ Paris rejected Dr. June Abadilla's (the treating primary care physician's) opinion that Spencer can work but a fraction of a full 8-hour workday because it was not well supported by medically acceptable diagnostic techniques and was inconsistent with other substantial evidence in the record. *Id.* The ALJ gave great weight to the April 2012 opinions of consultative examiners Drs.

Alexandra Boske and Greg Lynch, whose findings the ALJ found to be consistent with those of the qualified state agency consultants and Dr. John Gilbert. R. at 22. The ALJ found that Spencer is unable to perform past relevant work but that, based on the VE's testimony, Spencer can perform jobs that exist in significant numbers in the national economy. R. at 22-23. The ALJ concluded that Spencer has not been under a disability from September 29, 2011, through the date of decision. R. at 23. The Appeals Council upheld the ALJ's determination on July 8, 2014. R. at 1-3.

Spencer's relevant (to the arguments) medical history begins in 2009,[2] when Dr. H. Michael Oghia diagnosed her with interstitial cystitis and other bladder-related ailments. *See* R. at 138, 520. Dr. Oghia, after a hiatus, continued to treat Spencer into 2012 for related maladies, including irritable voiding symptoms. *See* R. at 513, 518. In May 2012, Dr. Oghia admitted Spencer to Kentucky River Medical Center for treatment related to these symptoms. R. at 527.

Spencer presented to St. Joseph Health System on May 4, 2011, for anemia-related treatment. R. at 433-35. Family Medical Specialty Clinic (FMSC) treated Spencer, on referral from Dr. Abadilla, in October 2011 for cervical herniated nucleus pulposus, cervical osteoarthritis, and cervicalgia. R. at 259. Spencer generally complained of pain, weakness, stiffness, numbness/tingling, and impaired sleep. *Id.* St. Mark's Family Clinic diagnosed Spencer with headaches, interstitial cystitis, obesity, spasmodic torticollis, vitamin D deficiency, osteoarthritis, peptic ulcer disease, anemia, degeneration of the cervical intervertebral disc, and lumbago. R. at 262-63. Spencer continued treatment at St. Mark's, at FMSC, and with Dr. Abadilla into November 2011. R. at 264-68, 298-305. The conditions mostly continued into

---

[2] As background, as a result of a 1994 motor vehicle accident, Spencer sought treatment from the Spine & Brain Neurosurgical Center in 1999, reporting pain, numbness, and tingling. R. at 17, 313-15. Evidence suggests that Spencer additionally suffered injury, at some point, in a four wheeler accident. R. at 422.

early-mid 2012. R. at 449-51, 453-55. After falling and injuring her shoulder, St. Mark's and Dr. Abadilla again treated Plaintiff in January 2013. R. at 624-27.

On September 12, 2011, Kentucky River Medical Center (KRMC) took an MRI of Spencer's cervical spine, noting a disc herniation and a minimal Chiari malformation. R. at 296-97. KRMC again treated Spencer in July 2012. R. at 557-58. In December 2011, Dr. Dee Abrams diagnosed cervical degenerative disc disease, Chiari malformation, lumbago, and lumbar radiculopathy. R. at 269. Also in December 2011, Dr. John Gilbert assessed Spencer; he found a variety of conditions, including cervical radiculitis, disc degeneration, insomnia, dizziness, anxiety, pain disorders, headaches, major depressive disorder, brain compression, cervicalgia, and neck strains. R. at 412-15. Dr. Gilbert followed up with Spencer in February 2012 for low back pain and leg pain, R. at 272-75, and again in April 2012 for similar complaints (along with Dr. Abrams), R. at 321. Dr. Gilbert ordered an MRI in January 2012. *See* R. at 340. This resulted in "unremarkable" findings. R. at 335, 340. Dr. Gilbert continued to treat Spencer through June 2012. R. at 321-26, 342-46, 355-59, 367-69.

Dr. Lynch, a psychiatric consultative examiner, evaluated Spencer in April 2012 and diagnosed major depressive disorder, Chiari malformation, neck and back injury, migraines, and chronic pain. R. at 421-25. Dr. Lynch noted that Spencer's GAF score of 54, along with other test results, indicated moderate difficulties in social or occupational functioning, as well as other moderate limitations. R. at 424. Dr. Alexandra Boske, a Southern Medical Group consultative examiner, also assessed Spencer in April 2012 for back pain and migraines. R. at 426-28. Dr. Boske found cervical neck spasms, some motion limitations, and normal gait, grip, and motor strength. *Id.* Dr. Boske diagnosed back pain, migraines, and possible cervical disc disease. *Id.*

In May 2012, Dr. Abadilla reported that Spencer complained of pain. R. at 447. She completed a first "medical report" assessment in June 2012. R. at 581-86. In July 2012, Dr. Abadilla assessed paresthesia, Chiari malformation, and degenerative disc disease. R. at 581-85. Spencer followed up with Dr. Abadilla again in September 2012. R. at 611-14. Dr. Abadilla completed a physical capacities assessment on November 13, 2012. R. at 587. She continued treating Spencer into January 2013, R. at 624-27, and she conducted a third assessment of Spencer on March 22, 2013. R. at 639.

From August 2012 to February 2013, Dr. Thomas Karelis, a pain management specialist, evaluated Spencer for low back, neck, and right knee pain. R. at 642-55. Dr. Karelis noted right disc herniation and minimal Chiari malformation, as well as certain musculoskeletal tenderness, an antalgic gait, and chronic pain. R. at 653-55. Additionally, in August 2012, Dr. Karelis at Kentucky Pain Management treated Spencer for neck, low back, and knee pain, as well as other ailments. R. at 609-10.

Drs. Dan Vandivier, Celine Payne-Gair, and Carlos Hernandez, non-examining physicians or psychologists, assessed Spencer's medical history and records and reached "not disabled" conclusions. Dr. Vandivier did so in May 2012, R. at 57, 62, and Drs. Payne-Gair and Hernandez in August 2012. R. at 90, 92-93, 95. Additionally, a January 21, 2013, MRI of the lumbosacral spine from Marcum and Wallace Hospital was consistent with early disc degenerative change but was "[o]therwise normal[.]" R. at 628. Finally, Kentucky River Community Care (KRCC) treated Spencer on February 22, 2013, for panic disorder and panic attacks that occurred over an approximately 6-month durational period. R. at 663-64.

## II.    ANALYSIS

*A.    Standard of Review*

The Court has carefully read the ALJ's full decision and all medical reports it cites. This has included review of reports or pertinent records generated by Drs. Abadilla, Boske, Lynch, Gilbert, and Karelis, as well as the state agency consultative sources. The Court also read and considered the full administrative hearing and other parts of the record cited by the parties or significant to the ALJ's decision.[3] This includes a host of doctors and medical providers who have treated or assessed Spencer, including the following (other than those mentioned above): Drs. Vandivier, Payne-Gair, Hernandez, Abrams, Harper, Johnson, and Oghia, as well as Kentucky River Medical Center, Southern Medical Group, St. Joseph Health System, Family Medical Specialty Clinic, Kentucky Pain Management, Marcum and Wallace Hospital, and Kentucky River Community Care.

Judicial review of the ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the ALJ properly applied relevant legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *id.* §

---

[3] It is up to the parties to enumerate the particular legal issues and to cite to the record. *See* General Order 13-7, at ¶ 3(c) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments."). Although the Court has carefully looked at this case, the focus appropriately has been on the citations and arguments raised by the litigants.

1383(c) (providing for judicial review for Supplemental Security Income claims to the same extent as provided in § 405(g)). Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or assess questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Commissioner or the ALJ merely because the record contains evidence, even substantial evidence, to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the ALJ's decision if it is supported by substantial evidence, even if the Court might have decided the case differently. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, when determining disability, conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4). At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110. At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Id.* At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Id.* At Step 4, the ALJ determines RFC and whether the claimant can perform past relevant work. *Id.* The inquiry at this stage is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the burden of proof shifts to the Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of

other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4).

When reviewing the ALJ's application of the legal standards, the Court gives deference to his interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the SSA's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

   B.   *The ALJ Did Not Commit Reversible Error by Not Explicitly Mentioning Dr. Oghia's Records*

First, Spencer argues that it "is complete error" "for the ALJ not to consider the medical records from Dr. Oghia and further ignore his letter of restrictions[.]" DE #14-1, at 9-11. Spencer points to Dr. Oghia's 2009 diagnosis of interstitial cystitis and accompanying symptoms. The Commissioner argues that "the ALJ did consider Dr. Oghia's records, even if he did not explicitly mention them" and that the records are "not relevant to whether Plaintiff was disabled beginning in September 2011" and do "not address a condition that Plaintiff alleged was disabling[.]" DE #16, at 5-6.

While the ALJ did not explicitly mention Dr. Oghia's records, he twice stated that he "careful[ly] consider[ed] the entire record[.]" R. at 13, 16. This would include review of Oghia records. The "ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). Further, the Court may consider Dr. Oghia's records "even if the ALJ failed to cite" them. *Heston v. Comm'r of Soc.*

*Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). "[A] treating physician's opinion will not be given controlling weight unless it is well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at 536 (citing 20 C.F.R. § 404.1527(d)(2) [now (c)(2)]). "Although medical history is relevant to a claimant's condition, . . . medical history should not be given more weight than that of a doctor observing plaintiff during the relevant period of disability." *Id.*

Dr. Oghia's restriction letter issued in 2009. R. at 138. Dr. Oghia's August 2012 (during the alleged disability period) report, R. at 513, states that he "downgraded" the interstitial cystitis to grade 0 and that Spencer felt "much better." *Id.* Notably, the doctor commented on the long gap (2.5 years "hiatus") in treatment following 2009. R. at 515. Spencer alleges disability based on degenerative disc disease, cerebral degeneration, and affective disorder, but Dr. Oghia reported an improved condition of interstitial cystitis, which is separate from Plaintiff's disability allegations. Dr. Oghia treated Spencer's symptoms connected to interstitial cystitis since 2009, when she chiefly complained of "irritable voiding symptoms[.]" *See* R. at 518. Dr. Oghia's November 2009 letter, R. at 138, likewise addresses issues wholly tangential to those raised in Spencer's disability application. Dr. Oghia, in 2009, "strongly support[ed] categorizing Mrs. Spencer as being permanently disabled" based on the interstitial cystitis diagnosis and accompanying symptoms. *Id.* However, Spencer does not claim disability based on any bladder or pelvis disorder, and the letter is from November 2009, nearly two years before the alleged disability onset date. Further, the letter contains inconsistencies with Dr. Oghia's own later medical records. *Compare, e.g.*, R. at 138 ("Mrs. Spencer has experienced all of these symptoms . . . leading to anxiety[.]"), *with* R. at 521 ("[d]enies anxiety symptoms").

Dr. Oghia's letter, confidently categorizing Spencer as disabled, also conflicts with other Oghia evidence. For instance, Spencer denied numbness, tingling, weakness, anxiety, and

depression, R. at 516, and Dr. Oghia found a "[f]ull range of [extremity] motions." *Id.* The Oghia

letter also is not, in many respects, consistent with other record diagnoses from other doctors.

*E.g.*, R. at 421-30. The record, viewed as a whole, demonstrates that, as in *Heston*, substantial

evidence supports the ALJ's decision, and he did not commit reversible error by giving careful

consideration to the entire record but failing to specifically cite to Dr. Oghia's records, which

address symptoms Spencer has not here raised and include evidence largely from before the

alleged disability period.[4] *See Bass v. McMahon*, 499 F.3d 506, 514 (6th Cir. 2007) ("This

evidence would not change the ALJ's decision, and remand for further consideration is not

required."); *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) ("No principle of

administrative law or common sense requires us to remand a case in quest of a perfect opinion

unless there is reason to believe that the remand might lead to a different result." (internal

quotation marks and alteration omitted)). The Court perceives no error in the ALJ not

commenting particularly on pre-claim records that do not address any alleged disabling

conditions. *See* R. at 208 (application, not identifying interstitial cystitis as disabling condition);

38 (Hearing Tr.) (not identifying interstitial cystitis as significant physical problem).

C.      *The ALJ Did Not Err in Finding Spencer's Anxiety to Be Non-Severe*

Next, Spencer contends that the ALJ erred by failing to consider Spencer's anxiety as a

severe impairment. DE #14-1, at 11-12. She specifically points to a February 2013 KRCC

assessment that describes her panic attacks as "so severe that she had to be seen on a crisis

intervention basis[.]" R. at 663 (emphasis removed). KRCC noted her mood as anxious and

---

[4] These critical facts distinguish the case from, for example, *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515 (6th Cir. 2014), where the ALJ "failed to even mention" Plaintiff's treating psychiatrist in a case involving allegations of mental disabilities. *Id.* at 529. Instead, "it is well settled that[] an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (internal alteration omitted). In any event, the ALJ acknowledged and considered that Spencer "also experiences pain in her . . . bladder[.]" R. at 17.

depressed. R. at 664. Spencer also cites St. Joseph's May 2012 report noting anxiety in her past medical history. R. at 433. The Commissioner responds that Spencer's argument is without merit. DE #16, at 4-5. The Commissioner argues that Plaintiff's cited evidence does not show satisfaction of impairment durational requirements. *See* 20 C.F.R. §§ 404.1509, 404.1505; DE #16, at 4.

Substantial evidence supports the ALJ's decision to find Spencer's anxiety to be non-severe. ALJ Paris specifically cited February 2013 treatment notes indicating that Spencer's "panic attacks were situational and, at that point, had been occurring for about six months." R. at 14. Because Spencer did not meet the 12-month requirement, the ALJ found "the impairment causes no more than a minimal limitation in [Spencer's] ability to perform basic work activities, and therefore is not severe." *Id.* The record indicates that Spencer had three panic attacks in the period between February 28 and March 13, 2013. R. at 636-37. She first entered KRCC on anxiety complaints on February 11, 2013. The ALJ held the hearing on April 4, 2013, and issued his decision on April 26, 2013. Thus, the impairment, as the ALJ found, did not meet the 12-month durational requirement. *See* 20 C.F.R. §§ 404.1509 ("Unless [a claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."), 404.1505 (requiring an impairment "which has lasted or can be expected to last for a continuous period of not less than 12 months"). Claimant, of course, had the disability proof burden. She points to know proof establishing the durational requirement either before the ALJ or here.

Further, an independent review of the record reveals substantial evidence supporting the ALJ's decision. Dr. Oghia reported in May 2012 that Spencer "denie[d] symptoms of anxiety[.]" R. at 516. Plaintiff likewise denied anxiety symptoms in April and June 2009. R. at 520-21.

11

Spencer denied anxiety and depression in February 2012, R. at 273, and April 2012, R. at 323. Dr. Boske noted that Spencer "[d]oes not appear depressed or anxious." R. at 427. Dr. Eunice Johnson noted (an unspecified degree of) anxiety in July 2012, but this does not alter the durational conclusion. R. at 564.[5] In the ALJ's hearing, Spencer denied taking medications for her mental state. R. at 41. Dr. Karelis did not diagnose or reference anxiety. R. at 609-10. Even Dr. Abadilla indicated "no" abnormality (as to depression and anxiety) in June 2012. R. at 582. Substantial evidence supports the ALJ's decision, and the Court declines to disturb it.[6]

> D.   *The ALJ Did Not Err in Formulating Spencer's RFC or Posing the Hypothetical to the VE*

Spencer then claims that the ALJ did not account for Spencer's moderate limitations to tolerate the stress of day-to-day employment in formulating Spencer's RFC and that the hypothetical to the VE thus failed to accurately described Spencer. DE #14-1, at 12-13. The Commissioner responds in opposition. DE #16, at 11-13.

The ALJ found that Spencer has the RFC to perform medium work with a variety of specific physical and mental limitations. R. at 16. Spencer argues that the ALJ "in the RFC gave no limitations for Ms. Spencer's ability to tolerate the pressure of day to day employment." DE #14-1, at 12. Spencer asserts that "the RFC and the limitations opined in the decision are inconsistent[.]" *Id.*

The ALJ did not err in determining Spencer's RFC. The ALJ exhaustively reviewed Spencer's hearing testimony, Laura Hayes's third-party report, and the medical evidence. R. at 16-22. The ALJ carefully considered all of the evidence and determined that Spencer's

---

[5] Neither does Dr. Robbins's vague notation of anxiety under past medical history in 2011. R. at 433.

[6] Regardless, because the ALJ found other severe impairments, he properly considered *all* impairments—whether severe or not—in the subsequent analytical stages. *See* 20 C.F.R. §§ 404.1523, 416.923; *see also McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008).

"statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely credible[.]" R. at 21. In formulating the RFC, the ALJ gave great weight to the opinions of Drs. Boske and Lynch. R. at 22. As the ALJ explained, Dr. Lynch found no more than moderate limitations in Spencer's ability to tolerate the pressure of day-to-day employment. R. at 22. Indeed, the ALJ found "moderate difficulties" for Claimant in the second and third "B" criteria. R. at 15. The ALJ accounted for this finding in the RFC. *See* R. at 16 (Spencer "also suffers with mental impairments, but she can understand, remember, and carry out simple work instructions. She can complete simple tasks, maintain attention and concentration for two-hour periods[.]"). The ALJ's other findings are not inconsistent with moderate limitations. *See Longworth*, 402 F.3d at 595-98 (moderate limitations included a "satisfactory ability to deal with work stresses"). Counter to Spencer's assertion, the ALJ in the RFC did reasonably account for Spencer's ability to tolerate the pressure of day to day employment through incorporation of a mental impairment finding, limitations to only simple work instructions and tasks, and 2-hour limits on attention and concentration. Spencer makes further RFC-related arguments later in her brief. *See supra* sections II.E and II.F.

Relying chiefly on Dr. Lynch's report, R. at 421, the ALJ found that Spencer had "moderate limitations in her ability to tolerate the stress and pressure of day-to-day employment." R. at 15. The ALJ stated that these "paragraph B" limitations "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." R. at 16.

The ALJ incorporated in his hypothetical to the VE the following terms: a claimant with an RFC to perform medium work activities, with "some mental impairments[,]" who "can't[7]

---

[7] The record indicates the ALJ said "can't" understand, R. at 48, but the RFC finding was that she "can" understand. This may be a transcription error, or the ALJ may have misspoken. The

understand, remember[,] or carry out simple work instructions," but who "can complete simple tasks, maintain attention and concentration for periods of about[] two hours at a time[,] complete a normal work day and work week[,] can relate appropriately to peers and supervisors," and "can adapt routine workplace things." R. at 48.

VE testimony can be substantial evidence supporting the ALJ's step five finding. *Felisky v. Bowen*, 35 F.3d 1027, 1035-36 (6th Cir. 1994). The VE hypothetical "should be a more complete assessment of [a claimant's] physical and mental state [than the RFC] and should include an accurate portrayal of her individual physical and mental impairments." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (internal quotation marks and alterations omitted). "Thus, while the RFC should focus on [a claimant's] abilities or, in other words, what [she] can and cannot do, the hypothetical question should focus on [her] overall state including [her] mental and physical maladies." *Id.* Subsequent decisions clarify *Howard*'s holding. *Howard* held "only that a denial of benefits based upon an ALJ's improper calculation of a claimant's residual functional capacity, a description of what the claimant 'can and cannot do,' must be reversed." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004). The language in *Howard* "requiring that hypothetical questions include lists of claimants' medical conditions" was "unnecessary to the outcome" and "impermissibly conflict[s] with [the Sixth Circuit's] prior decisions." *Id.* at 631, 633. The Sixth Circuit "cannot read *Howard* to create an entirely new requirement for hypothetical questions to vocational experts." *Id.* at 633. However, "[i]f the hypothetical question does not accurately portray Plaintiff's physical and mental state, the vocational expert's testimony in response to the hypothetical question may not serve as substantial evidence in support of the ALJ's finding that Plaintiff could perform other work."

---

Court need not resolve it because the word change would cut against Claimant's argument by presenting the hypothetical as more impaired than what the ALJ actually intended.

*Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007). The ALJ must "incorporate only those limitations accepted as credible." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Recall that the ALJ quite deliberately and intentionally framed the RFC as expressly including his findings about mental limitations from Step 3. The ALJ prefaced the RFC by stating unequivocally, "[T]he following residual functional capacity assessment reflects the degree of limitation the [ALJ] has found in the 'paragraph B' mental function analysis." R. at 16. The ALJ thus, well aware of the findings he had just recorded, then set forth the RFC. That RFC framed the VE hypothetical, and did so accurately. A moderate limitation simply suggests that "'the individual's capacity to perform the activity is impaired.'" *Thompson v. Astrue*, No. 3:11-CV-472 CAN, 2013 WL 393290, at *4 (N.D. Ind. Jan. 31, 2013). This leaves for elaboration the degree and extent of the limitations. *See id.*; *see also Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 637 (3d Cir. 2010) (quoting non-binding Agency POMS manual and stating that a "moderate" limitation "does not require that the individual's capacity be at a level that is unacceptable to the national workforce"). Here, the ALJ particularized the limitation level by identifying Claimant's abridged capacities in the areas enumerated. This captured the essence of the moderate limitation findings.

Here, the ALJ's hypothetical incorporated his RFC finding and accurately conveyed his "paragraph B" findings, including "slight limitations in her abilities to understand, remember[,] and carry out instructions, and to sustain attention and concentration, toward performing simple, repetitive tasks." R. at 15; *see also* R. at 48 (can only complete simple tasks and maintain attention "for periods of about[] two hours at a time"). The ALJ's hypothetical contemplated that Spencer could "complete a normal work day and work week[,]" "relate appropriately to peers

and supervisors," and "adapt routine workplace things." R. at 48. The ALJ's phrasing is not inconsistent with his finding of moderate workplace limitations.[8] *See Longworth*, 402 F.3d at 595-98 (moderate limitations included a "satisfactory ability to deal with work stresses"). The ALJ did not find "marked" restrictions, which "means more than moderate but less than extreme." R. at 14. Indeed, even a "severe impairment may or may not affect [a claimant's] functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).[9] The ALJ considered Spencer's "age, education, work experience, and residual functional capacity" and concluded that she "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. at 23. This conclusion finds substantial evidentiary support in the record. *See, e.g.*, R. at 57-62, 90-95, 105-110 (For example, "[t]he claimant can . . . complete a normal workday and workweek at a consistent pace."). Even Dr. Abadilla opined that Spencer could relate with co-workers, stand up to the stress of engaging in productive work activity, follow instructions, maintain attention and concentration, remember locations and procedures, and maintain socially acceptable behavior. R. at 586. The ALJ satisfactorily formulated the hypothetical and properly relied upon the VE's testimony to reach a "not disabled" finding.

    E.    *The ALJ Did Not Err in Rejecting Dr. Abadilla's RFCs*

Spencer next asserts that the ALJ erred by rejecting Dr. Abadilla's RFCs or assessments of July 24, 2012, November 13, 2012, and March 22, 2013. DE #14-1, at 13-14. Spencer argues

---

[8] Based on the testimony and proof, the ALJ found only "mild restrictions" in activities of daily living, R. at 14-15 and "moderate difficulties" in social functioning and concentration, persistence, and pace, R. at 15. A severe impairment, on the other hand, "significantly limit[s]" a claimant's ability to do basic work activities, a conclusion to which the ALJ defensibly did not come. 20 C.F.R. § 404.1521(a).

[9] Indeed, Spencer's hearing hypothetical to the VE—not the ALJ's—more likely fails the test of *Howard* and later cases. Spencer asked the VE to assume a hypothetical claimant who can, among other things, "stand and walk for two hours a day[ and] sit a total of two hours a day[.]" R. at 50. As the ALJ found, such limitations are not consistent with the evidence as a whole.

Dr. Abadilla's findings were supported by Dr. Gilbert's and Kentucky Pain Management Service's findings. *Id.* at 13. The Commissioner responds in opposition. DE #16, at 6-9.

The ALJ rejected Dr. Abadilla's opinions as "not well supported by medically acceptable clinical and laboratory diagnostic techniques [and] inconsistent with the other substantial evidence in the record including the findings of medical specialists." R. at 21. The ALJ may only give a treating physician's opinions controlling weight if they are well-supported medically (based on acceptable clinical and other techniques) and consistent with the other substantial evidence in the record. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); 20 C.F.R. § 404.1527(c)(2)-(4). The ALJ must give good reasons to discount a treating physician's opinions. 20 C.F.R. § 404.1527(c)(2); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009); *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

Dr. Abadilla consistently opined that Spencer had extreme strength, manipulative and postural limitations and claimed that Spencer could not work more than two hours per day. R. at 406-08, 581-86, 587, 639-40. The ALJ observed that Dr. Abadilla's records themselves did not support these opinions. R. at 21. Dr. Abadilla's records from September-December 2011 contain no specific information on severity or extent of the specifically identified limitations. R. at 458, 462, 466, 472, 475-76, 484, 488. Similarly, Dr. Abadilla's 2012 records were mostly unremarkable, with no indication of the above limitations (or strength / functional testing). R. at 450, 454, 591, 596, 601. Dr. Abadilla's records do not reveal that she tested Spencer's strength, manipulative, and/or postural limitations. Indeed, the visit at the time of the July 2012 assessment shows little or no testing to corroborate the limitations communicated. Dr. Abadilla notes "cervical . . . tenderness" and "spine range of motion limited," but performs no testing to

quantify the limits. Further, she references "poor grip" but includes no testing as part of the statement.

An independent review of the record reveals that substantial evidence supports the ALJ's decision to discount Dr. Abadilla's opinions. Dr. Boske found that Spencer had normal gait and station, normal grip strength, and normal motor strength in April 2012. R. at 426-30. Dr. Boske found that Spencer had only mild lifting and carrying restrictions and no cognitive defects. R. at 428. Dr. Gilbert similarly found that Spencer had normal range of motion in the neck and mid-back, mild lumbar limits, and that she had normal motor strength with normal reflexes, sensation, gait, and station. R. at 274-75. Dr. Gilbert also found, however, that Spencer had 8/10 back pain. R. at 413-15. Dr. Gilbert assessed normal strength and range of motion, except for a mildly reduced lumbar range. R. at 272. Spencer denied a wide variety of pain to Drs. Gilbert and Harper. *See* R. at 386. Spencer further denied neck stiffness and neck pain, as well as other musculoskeletal pain and anxiety, to Dr. Gilbert in March 2012. R. at 273. Spencer "denie[d] joint pain" to Dr. Oghia in 2012. R. at 516. She further denied numbness, tingling, weakness, tremors, dizzy spells, and symptoms of anxiety and depression. *Id.* Dr. Gilbert reports no hand tingling or numbness very close in time to Dr. Abadilla's paresthesia report. R. at 273. A January 2012 brain MRI was unremarkable. R. at 335. Spencer denied headaches in October 2011, R. at 262, and February 2012, R. at 273. A July 2012 x-ray of Spencer's left shoulder was negative for any abnormalities. R. at 598. Drs. Boske and Lynch found only mild limits as well, R. at 421-28.

Further, the state agency consultants' reports support discounting Dr. Abadilla's opinions. *See* R. at 58-62, 73-76, 90-97, 104-12. Spencer cites to Kentucky Pain Management's finding of "bilateral tenderness" and various findings of pain. R. at 654-55. Even if some other evidence in the record may support Dr. Abadilla's opinions, the Court cannot reverse ALJ

findings merely because the record contains evidence (even substantial evidence) to support a different conclusion. *Warner*, 375 F.3d at 390. The ALJ gave good reasons for non-reliance on Dr. Abadilla's opinions, R. at 19-22, and thus reasonably rejected them. He rightly perceived a paucity to objective confirmation of the severity and extent of limitations imposed by Dr. Abadilla. He also assessed the full record and found Dr. Abadilla's perceptions and views at odds and directly inconsistent with substantial countervailing medical proof, proof from the same period. The record may not have compelled but surely supports these rational and well-founded conclusions.

> F.   *The ALJ Did Not Err in the Manner of Weighing Drs. Lynch's and Boske's Opinions*

Finally, Spencer argues that the ALJ erred in giving great weight to the opinions of Drs. Lynch and Boske and in finding that the state consultants' reports supported those opinions. DE #14-1, at 14-15. Specifically, Spencer argues that Dr. Boske had not reviewed documentation supporting the Chiari malformation diagnosis. *Id.* at 14. Spencer also argues both Drs. Lynch and Boske performed examinations in early 2012, before Spencer's condition continued to worsen. *Id.* at 15. The Commissioner responds in opposition. DE #16, at 9-11.

The ALJ determines the weight to give medical opinions based on (among many things) whether medically acceptable clinical and laboratory diagnostic techniques support the opinions and whether they are inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(1), (3)-(6). Again, the Court cannot reverse ALJ findings merely because the record contains evidence, even substantial evidence, to support a different conclusion. *Warner*, 375 F.3d at 390. The Court does not re-weigh or resolve conflicts in the evidence. *Bass*, 499 F.3d at 509.

Dr. Boske performed her own examination of Spencer. R. at 426-30. Her report is consistent with Dr. Gilbert's. *See* R. at 274-75. It is also consistent with Dr. Hernandez's (a state

consulting physician). *See* R. at 92-93, 107-08. Similarly, Dr. Lynch performed an examination, and the report is consistent with Drs. Vandivier and Payne-Gair. *See* R. at 55-57, 69-71, 104-05. Drs. Boske's and Lynch's opinions are consistent with the records of their examinations and with other substantial evidence; the ALJ reasonably weighed their opinions.

That Dr. Boske did not have and review Chiari malformation documentation does not unsettle the Court's conclusion that substantial evidence supports the ALJ's decision. Indeed, Dr. Boske acknowledged that Spencer reported the Chiari malformation diagnosis. R. at 428. Dr. Boske formed her opinion "[b]ased on [her] examination and the objective evidence[.]" *Id.* "The ALJ [is] entitled to assign significant weight to the opinions from . . . medical consultants despite the fact that they did not review all of the medical records." *Carter v. Astrue*, 886 F. Supp. 2d 1093, 1111 (N.D. Iowa 2012); *accord Cook v. Astrue*, 629 F. Supp. 2d 925, 932-33 (W.D. Mo. 2009) (refusing to adopt "a per se rule that failure to send medical records to be reviewed . . . automatically results in the opinion of that doctor not being entitled to substantial weight").[10] The essential criticism here is that Boske did not have the MRI record regarding potential Chiari malformation. This goes to the weight of the evidence, and the ALJ had this criticism before him at the hearing. He reasonably considered the full record and assigned defensible weight to Boske's opinions. Notably, the MRI record is uneven as to the particular issue (including a

---

[10] The Court notes that medical source inability to examine the full record certainly is not ideal, *see, e.g.*, *Barrett v. Astrue*, No. 09-11-GWU, 2009 WL 3270264, at *4 (E.D. Ky. Oct. 9, 2009) (remanding when doctor did not review critical MRI results and "did not have the opportunity to see and review the numerous exhibits which came after his November 2004 review"), but on these facts does not require remand. Dr. Boske noted neck pain and headaches that "start at the base of [Spencer's] neck and feel[] as if 'someone is trying to poke a rod out of the top of her head.'" R. at 426. The only documentation at the time concerning the Chiari malformation in the record merely notes diagnosis of same, *e.g.*, R. at 297 (September 2011 MRI results noting "incidentally" a minimal Chiari malformation), which Spencer reported to Dr. Boske. *See also* R. at 335 (noting a January 2012 "[u]nremarkable MR evaluation of the brain"); R. at 428 (Dr. Boske acknowledging in April 2012 that Spencer "has been diagnosed with Chiari malformation"). Boske based her opinions chiefly on the examination itself, and incidentally, the record also includes Dr. Gilbert's "unremarkable" 2012 MRI.

"minimal" malformation diagnosis from 2011 and yet an "unremarkable" MRI from 2012). Nothing in Boske's views suggest she needed confirmation on the issue or would have altered her views with confirmation. She premised her opinions primarily on her own exam and assessment of the Claimant and, regardless, was aware of the Chiari malformation diagnosis. The ALJ assessed the overall proof in a reasonable manner and rested his conclusions on substantial evidence. Further, the ALJ is well within his discretion to consider and assign reasonable weight to medical examination reports and opinions from 2012 when Spencer alleges her disability began in September 2011. For all of these reasons, the Court rejects Spencer's argument.

## III.   CONCLUSION

Substantial evidence supports the Commissioner's determination to deny Spencer benefits. The Court therefore **GRANTS** the Commissioner's motion for summary judgment (DE #16) and **DENIES** Spencer's motion for summary judgment (DE #14).

The Court will enter a separate judgment.

This the 30th day of July, 2015.

Signed By:

_Robert E. Wier_   REW

United States Magistrate Judge